## JENKINS v. TRAGER.

(*Circuit Court, S. D. Mississippi. M. D.* November 25, 1889.)

**1. BOUNDARY LINE BETWEEN LOUISIANA AND MISSISSIPPI.**

The line of demarkation run. fixed, and marked by Andrew Ellicott, commissioner on the part of the United States, and William Dunbar, commissioner on the part of Spain, in 1798, was the true boundary line between the territory of the United States and that of Spain prior to the purchase of the latter territory, and is, and ever since has been, the boundary line between the states of Mississippi and Louisiana, irrespective of any mistakes or errors in running and marking said line.

**2. PUBLIC LANDS—PRESUMPTION OF PATENT FROM LAPSE OF TIME.**

John Jenkins, plaintiff's father, purchased the land in controversy in 1831, and immediately went into actual possession, under a deed describing metes and bounds,

and remained in possession until 1855, when he died. His executors under his will continued in possession until 1867, when this land was partitioned to plaintiff, who has held possession ever since. *Held*, that the law presumes that a patent issued for the same from the United States, and that the conveyance, coupled with the possession, vested in the plaintiff a valid legal title to the land embraced within the calls of the deed, in the absence of proof to the contrary.

3. BOUNDARIES—BY CONSENT.

When the boundary line between the lands owned by adjoining land owners is unknown, they may by parol fix a line between each party, each party mutually agreeing thereto, and acting thereon, which is binding between them; but, if the line is known, then the transfer of any portion of the land on one side of the line from the one to the other must be in writing, to be valid.

4. ADVERSE POSSESSION—RIGHTS OF GRANTEE.

The adverse possession of land by the grantor cannot avail the grantee, beyond the boundary line described in the deed.

(*Syllabus by the Court.*)

At Law. Ejectment.

*Nugent & McWillie*, for plaintiff.

*Calhoun & Green*, for defendant.

HILL, J., (*charging jury.*) The plaintiff, in his declaration, alleges that he is the legal owner of the land, and improvements thereon, described in his declaration, and is entitled to the possession thereof, with the rents and profits thereon since the 21st day of May, 1882, when it is alleged the defendant unlawfully deprived him of the possession of the same. To this declaration the defendant has pleaded not guilty, which throws upon the plaintiff the burden of proving to your reasonable satisfaction the truth of the allegations made in the declaration.

It is admitted that the defendant is, and was at the time the suit was commenced, in possession of the land described in the declaration, though it is insisted that it is in Louisiana. The question to be decided by you is to ascertain from the proof whether or not the plaintiff was, at the time he brought his suit, the legal owner of the land, and improvements thereon, as described in his declaration. The certificate of the register of the land-office, given to Richard Collins, dated January 1, 1809, is evidence that Collins had entered 480 acres of land lying on the east side of the Mississippi river, but does not describe the land so that it could be found, and, if there was no other evidence in the case, would be insufficient evidence to sustain the action. But the deed of Richard Collins and wife to William Collins, evidently, was intended to embrace the same land, and describes it as being in Wilkinson county, Miss., bounded on the west side by the Mississippi river, and on the south by the line of demarkation between the United States and the Spanish territory, being the same line now dividing the states of Mississippi and Louisiana. This line of demarkation, as shown by the evidence before you, was established by Andrew Ellicott, commissioner on the part of the United States, and William Dunbar, commissioner on the part of Spain, in 1798, and has ever since been recognized by the states of Mississippi and Louisiana as the dividing line between them. It is conceded that the land described in the declaration is within the boundary set out in this deed, if it lies north of said demarkation line, and that if it lies south of this line it is not within the calls of any of the deeds read in

evidence to establish the plaintiff's title. The deeds and transcripts from the records of the probate courts of Adams and Wilkinson counties, read in evidence, establish the following facts: That William Collins conveyed the lands purchased from Richard Collins and wife to John Wall, and that the heirs at law of John Wall conveyed whatever of title John Wall had in the same lands to John F. Carmichael; that John F. Carmichael died intestate, leaving his sister, Phœbe Carmichael, his only heir at law, to whom the land in controversy, together with other lands, descended; and that Phœbe Carmichael, on the 3d day of August, 1838, conveyed the land thus cast upon her by descent to John C. Jenkins, the father of plaintiff. The uncontradicted parol evidence establishes the fact that said John C. Jenkins, soon after his purchase, went into actual possession of the lands so purchased; that he cleared and cultivated a portion of them, and continued up to his death in such possession; that his executors under his will continued in the possession thereof until the 28th of February, 1867, when they were partitioned, and the south-west corner of the tract, embracing the land conveyed by Richard Collins and wife to William Collins, and through mesne conveyances vested in John C. Jenkins, was allotted to the plaintiff, who immediately went into the actual possession of the same, and so continued up to the bringing of this suit. This actual occupation, therefore, covered a period of about 50 years. From this possession, taken under the deed from Phœbe Carmichael, and so long continued, it will be presumed that a patent was issued by the United States to the original purchaser of the land, and that John C. Jenkins, in his life-time, had, and the plaintiff, his son, has, a valid legal title to the land described in the declaration, unless he be barred, as to that portion of it now in controversy, by the adverse possession of the defendant or Mrs. Cheatham, under whom he claims title. Such adverse possession, however, must be continual and unbroken for the space of 10 years next before the commencement of this suit, to be availed of by the defendant. The possession of a part of the lands conveyed to the plaintiff and his ancestor is a possession of all the lands included in the conveyance under which such possession was taken; but, as to any part of the land not described in the deeds relied on, the adverse possession can only extend to the portion in actual occupation adversely for 10 years without any break therein. This rule applies to the adverse possession claimed on both sides.

The first and most important question to be ascertained by you under the proof is as to where the original line of demarkation, fixed by the commissioners Ellicott and Dunbar, is, as that must fix the boundary, not only between the states of Mississippi and Louisiana, but between the land claimed by the parties to this suit; both asserting that line as their line and only boundary. The thirty-first parallel, north latitude, was agreed to be the line between the United States and Spain, and consequently between the states of Mississippi and Louisiana; and it was further agreed that the commissioners named should determine where that parallel was, and fix and mark its actual location. When that was

done, the line of demarkation as fixed must remain to this day, whether there was any mistake made in determining, running, and marking it or not; and no subsequent agreement or survey can change or alter it, nor can the fact that the one state or the other exercised jurisdiction of any kind on the opposite side of the line, or that those residing on the one side or the other supposed they were living in one state when they were in fact residing, in the other state, be evidence of the place where the line of demarkation is, if the proof shows to your satisfaction that the commissioners actually ran and marked it at a different point. The surveys and other written evidence upon the part of the plaintiff place the said line just south of the store-house and ground occupied by defendant, and is *prima facie* proof that this is the line fixed by the commissioners; but it is insisted upon the part of the defendant that the evidence introduced by him shows that this is not the true line, and that the line run and marked by the said commissioners, properly retraced, is north of the said line, and north of the land in controversy in this suit. Whether this is so or not, you must determine from all the evidence in the cause, after carefully considering and weighing it. It is insisted upon the part of the plaintiff that before the line was retraced by the engineer, Babbitt, it was a matter of dispute, and doubtful, where the line of demarkation was fixed and marked by the commissioners, Ellicott and Dunbar; and that he and the defendant mutually agreed that said Babbitt should find out, as best he could, where the said line was, and rerun and remark it; and that when so rerun and remarked it should be the boundary line between them, no matter what the result should be; and that after the line was run and marked by said Babbitt, and found to be south of the land in controversy, defendant agreed to remove the houses and improvements, and that plaintiff was not informed he did not intend to do so, or to stand by the agreement, until just before this action was commenced. This agreement is denied by the defendant. You will determine from the testimony whether it was made or not. Where the line separating the lands of two persons is unknown, they may by parol agree and fix a line between them; but it must be mutually and unconditionally agreed to, and acted upon, by them. If, in this case, you shall find from the proof that the line run by Babbitt was actually agreed upon after it was determined and marked, and that the defendant agreed to remove his buildings within some future time, but that he changed his purpose, and did not notify the plaintiff of such change, and that the plaintiff relied upon the agreement and promise, the defendant would be estopped from repudiating such an agreement. As before stated, however, the agreement must have been mutually entered into between the parties, and acted upon by them, or the defendant must have entered into such agreement as would have induced the plaintiff to believe that the defendant conceded to him the right to the possession of the premises, and was only occupying them by the sufferance of the plaintiff. If this was the fact, then the agreement would be valid and binding, and would fix the boundary line between the parties to this suit, but could not affect in any way the line of demarkation be-

tween the states of Mississippi and Louisiana fixed and marked by the commissioners Ellicott and Dunbar in 1798, even if that line was run by said commissioners north of the lands in controversy. If you believe this to be so, your verdict will be for the defendant, as this court would have no jurisdiction to try the issue between the parties, the premises being in another state, while the agreement might be binding between the parties. It is claimed on the part of the defendant that, although the land in controversy lies north of the real demarkation line between said states, and is in the state of Mississippi, yet that Mrs. Cheatham, under whom he holds, before his purchase, and he since such purchase, have held continuous adverse possession of the land in controversy for more than 10 years before this action was commenced, and, therefore, that the plaintiff is barred of his recovery. The conveyance from Mrs. Cheatham to plaintiff specifies the said demarkation line as the northern boundary of the land conveyed, and any possession of the land had by her, to be availed of by defendant, can only be extended to that line. Any possession which Mrs. Cheatham may have had beyond that line cannot be availed of by defendant, as it is not embraced in his deed, and is not shown to be claimed by Mrs. Cheatham, so as to show an outstanding title in her.

If, after weighing and considering the proof on both sides, you shall find the issue in favor of plaintiff, you will ascertain the value of the rents of the land, and of the improvements described in the declaration, since the 21st day of May, 1882, up to the present time, the value of the improvements put thereon by the defendant, and the value of the land without the improvements; and you will deduct the amount of the rents from the value of the improvements, and state the same in your verdict, or the balance of the rents over the improvements, as the case may be. In weighing the evidence on all these points, you will consider all that has been introduced on both sides, including the testimony of the plaintiff and defendant, who are competent witnesses. The interest each has in the controversy only goes to his credibility. If you shall find conflicts in the evidence, you will reconcile the differences, if you can; but, if you cannot, you will determine which statements are most probably true. If you shall find from the proof that the plaintiff is not the legal owner, and entitled to the possession of the land under the instructions given, your verdict will be simply for the defendant.