DAWSON *v.* FALLS CITY BOAT CLUB.

|  |  |
|---|---|
| 125 | 433 |
| 127 | 328 |
| 125 | 433 |
| s84NW | 618 |
| 125 | 433 |
| s142 | 615 |

EJECTMENT—EVIDENCE OF TITLE—ADVERSE POSSESSION—INSTRUCTIONS.

* 1. Where plaintiff's grantors were for a long period of years in possession of land, and while so in possession executed deeds of conveyance, *held* sufficient, in the absence of proof to the contrary, to establish a title from the government.

2. It is not error to refuse an instruction that there is no evidence that plaintiff has title by adverse possession, where such claim was not made upon the trial, and the case was not submitted to the jury upon that theory, but upon the theory that he had title by deed.

3. It is not error to refuse requests where their substance is covered by the oral charge.

4. It is not error to refuse to instruct the jury that they cannot render a judgment upon the testimony of a particular witness, where his testimony is competent evidence to be considered by the jury in connection with all the testimony in the case.

Error to Chippewa; Steere, J. Submitted October 11, 1900. Decided December 31, 1900.

Ejectment by Carrie Dawson against the Falls City Boat Club, Eben S. Wheeler, and Clara Wheeler. From a judgment for plaintiff, defendants bring error. Affirmed.

---

* Head-notes by GRANT, J.

125 MICH.—28.

Plaintiff claims to be the owner of private land claim No. 106. Defendant Eben S. Wheeler is the owner of private land claim No. 105. These claims are bounded on the north by the St. Mary's river, and on the south by Portage avenue. The land in dispute is a triangular piece, running from a point on Portage avenue to the St. Mary's river, where it is about 15 feet wide. Plaintiff claims that this triangular piece is a part of private claim No. 106. Defendant Wheeler claims that it is a part of private land claim No. 105, and that, if it is not, he has obtained title to it by adverse possession. Both claims were hotly contested, and a vast amount of evidence introduced upon the respective claims. Both were disputed questions of fact, and the jury decided them in favor of the plaintiff.

Defendant claims that there was a fence built and maintained along the east line of the disputed tract; that that fence marked the original boundary; that it has been maintained for a sufficient length of time to give him title by adverse possession; and that he has during that time been in continuous, open, and notorious possession thereof. A boat-house was built on claim No. 105 in 1885, and a portion of it was on the disputed territory. Plaintiff contends that this fence has not been maintained as a line fence, and that whatever possession defendant's grantors had was not hostile. By the consent of both parties and the direction of the court, the jury were permitted to view the premises.

Plaintiff introduced in evidence, together with the field-notes, a certified copy of a patent of private claim No. 106 from the United States to William McMurray, dated the 1st day of May, 1860, and duly recorded on the 1st day of November, 1875. She then offered in evidence a warranty deed from William McMurray and wife to Amanda Acker, dated October 15, 1851, and recorded June 14, 1853, covering the same land as the patent. This deed appears to have been executed in Canada, had but one witness, and was executed before one James Coleman, the

mayor of the town of Dundas. Objection was made to the admission of this record that the mayor was not such an officer as was authorized to take acknowledgments of deeds under our statute. Other objections were also made. It appears that the record of this deed was not received in evidence. Plaintiff then offered in evidence a warranty deed from Mrs. Acker and her husband to one Stone, dated October 31, 1853, and recorded February 6, 1859. This deed recited that the land (private claim 106) was formerly known as the "McMurray Claim," was bounded on the west by the claim of Eliza Johnston (who was the patentee of claim 105), and that it was "the same premises that were heretofore conveyed to Amanda Acker by William McMurray and wife." Plaintiff then introduced the record of other deeds, showing a complete chain of title from Mrs. Acker to herself.

It seems essential to a complete understanding of the errors assigned, to state the oral charge in full upon the controlling issues in the case. It is as follows:

"On the part of the plaintiff, Mrs. Dawson, it is claimed that this disputed strip lies to the east of the boundary line between these two claims, and that it is, therefore, within the confines of private claim 106, which she owns. She claims that the defendant has occupied it for some time and has held the possession of it from her, and that she is entitled to recover the possession of it in this suit by virtue of her ownership. On the part of the defense it is denied that this disputed strip lies to the east of the boundary line between these two claims, but it is claimed that it lies to the west, and that it is a part of private claim 105, which the defendants own. And it is also claimed, in behalf of the defense, that, in any event, regardless of where the boundary line is, regardless of the government surveys, that the defendant Wheeler has had quiet and peaceable possession and use of this strip for so long a period of time that litigation is barred, and that, as a matter of law, he has become the owner by prescription, —by peaceable possession.

"The plaintiff, claiming the right to recover as the owner of this land, is required, in order to establish that claim, to prove her title; it is necessary for her to show

a title to the property before she can recover, in any case; and upon that phase of the case questions of law arise, and the court must dispose of them.

"All the records and documents offered in evidence are to be passed upon by the court as questions of law; and I must instruct you in this case that the records, as offered in evidence, fail to establish the title on the part of Mrs. Dawson to claim 106 running back to the United States government. But, she having shown a chain of title running back for a considerable term of years, if, in that connection, she shows that that title came down through persons in possession of the land claiming as owners, she would in law be presumed to be the owner, and presumed to have a title which came down from the government; and in that connection, in relation to the possession of herself and those from whom she claimed to hold, the possession of part of the land, under a conveyance covering the whole of it, would be presumed to be a possession of the whole of it, in the absence of anything to the contrary. So, you see, two serious questions of fact which come up for the jury to decide, and which you will naturally take up, are: *First*, where is the true boundary line between these two private land claims? and, *next*, if you dispose of that in favor of the plaintiff, has the defendant held this property for the statutory period, so that he has title to it by right of possession?

"The question of peaceable possession is one which is before you, and must be disposed of as a matter of fact. It is always a question of fact in a case of this kind, where there is testimony presented to you; and you are instructed that, in order to constitute an adverse possession sufficient to give title, there must be an actual, exclusive, continuous, visible, notorious, distinct, and hostile possession of the land claimed to be held adversely for the period of 15 years continuously next before the commencement of the suit; and in order for the defendants to retain, by adverse possession, the lands mentioned in the declaration, or any part thereof, they must satisfy you, by a preponderance of the testimony, that they have so held the land, or a part thereof, in good faith, believing themselves the owners of it by such possession for the period required by the statute. As to that phase of the case, the burden is upon the defendants. In order to establish their title by adverse possession, they must satisfy you, by a preponderance of evidence, that they have held possession as required by law.

"When you take up the question of the true boundary line (that of determining whether or not this tract of land lies to the east or west of it), you pass upon all evidence which is before you,—the testimony of the old inhabitants who have given their evidence, the testimony of the surveys made, and everything in connection with the case which appeals to your judgment. It is a matter of fact, and you are not bound by the testimony of the surveyors. Their testimony is competent, and is before you for you to exercise your judgment upon. But in that connection you are to remember that boundaries and land-marks govern, rather than courses and distances. To be specific, I will give this to you just as requested by counsel for the defense: 'You are instructed that it is the law that, in retracing lines of a former survey, courses and distances shown by the field-notes of the former survey must yield to the original artificial or natural monuments.' It is a question of fact entirely for you to say where the true line is, if the testimony is sufficient to satisfy you upon that point.

"Taking up again the matter of peaceable possession, you are instructed that, if you find the defendant E. S. Wheeler and his grantors have been, for a period of more than 15 years next before the commencement of this suit, —and it was commenced on the 22d of October, 1898, —in actual, continuous, visible, notorious, distinct, and hostile possession of the land in dispute, then your verdict should be for the defendants, because such long-continued adverse possession gives Mr. Wheeler as good a title as a deed would give. You are further instructed that when a possession is by actual occupation of the land in question, or by tenants under claim of title in the landlord, then the possession is visible, is open, is notorious, and distinct, and will be presumed to be hostile. Something has been said to you in regard to the previous possession of those who preceded Mr. Wheeler not attaching for his benefit; but you are instructed, as a matter of law, that if, at the time he purchased, he was given possession of this property by his predecessors, who had held possession, the possession of his predecessors would attach to his possession, and would be computed in ascertaining the length of time possession was held adversely to the plaintiff in this case.

"There is another question which comes up in this case, to which I call your attention, and that is the question of

the riparian rights, or water front. A part of this strip of land in question is land covered by water, or, as it is called, 'water frontage.' You are instructed that it is not necessary that the defendant and his successive grantors should have held this water front actually in possession, under the water; that is, that they should have actual physical occupation, such possession as would be required in the case of solid land, or the upland. And, accordingly, if you find that the defendant had adverse possession, as heretofore explained to you, of the upland, for the statutory period of 15 years, then the adverse possession of the upland would carry with it the enjoyment of the riparian rights, or of the water front,—the land under the water, so far out as the ownership goes. And it is a question of fact for you whether or not he did have possession of this strip in dispute clear to the boundary line,— the water line; that is a question of fact. There is some issue as to whether there was a strip of land between the north fence and the water which he did not occupy; and it is also claimed on the part of the plaintiff that she, and her tenants under her, have had possession of that. That is left to you as a question of fact. It is not necessary or expected, in order to establish peaceable possession, that water frontage beyond the water line should actually be fenced in, inclosed, and held by absolutely-defined boundaries, as uplands must be in order to establish peaceable possession; but if ordinary use and occupation, for business or pleasure, was had by Mr. Wheeler, such as the frontage was adapted to, and he exclusively exercised control and jurisdiction over that, and made such use of it as the surroundings seemed to justify, and as could be made under the circumstances, that would be a possession, even though he did not have it inclosed and occupied the entire time. If his possession extended to the water front, with no intervening strip of land, his possession of the shore would be a possession of the riparian rights, or the water front to the channel bank. Whether or not he and his tenants, the boat club, and any others in regard to whom testimony has been given, held possession of this water front sufficient to establish an open, notorious, hostile, and adverse possession, is also a question of fact for you.

"You are to remember that the burden of proof is on the plaintiff, and, in order to recover at all, she must prove to your satisfaction that she is the owner of the land by a

series of deeds coming down as I have stated, accompanied by possession and claim of ownership and delivery of possession, and by proof that the land in question lies to the east of the boundary line between the two private claims. If that is not established to your satisfaction by a preponderance of evidence, of course the case ends there, and your verdict would be for the defendants. If it is established, and you find that she is the owner of the legal title to this strip of land, then you must take up the question of peaceable possession, and ascertain whether or not the testimony convinces you, by a preponderance of evidence, that the defendant has acquired title by a peaceable possession for 15 years, as already explained.

"There has been some testimony offered in regard to a conversation between Mr. Gallagher, one of the former owners of private claim 105, and Mr. Easterday, one of the former owners of private claim 106, which, it is claimed, tends to establish an agreement between the parties; but I must instruct you, as a matter of law, that any agreement in regard to real estate, or the title to real estate, which is not in writing, and which is not acted upon, is not binding, under the statute of frauds. If the testimony satisfies you that Mr. Easterday had built a fence along the west line of his property, or where he conceived it to be, at a period more than 15 years prior to this conversation; that that fence had been retained and maintained as a boundary line; that both parties had occupied up to it, and held possession up to that boundary line,—any mere oral agreement between Mr. Easterday and Mr. Gallagher after that time, after the expiration of 15 years, would not be binding upon them or their grantees, unless it was acted upon, and the fence then changed. It would come within the statute of frauds, and, even though they had expressly agreed, it would not be binding upon any of the parties."

In addition to this oral charge, the court gave the following requests of the defendants:

"If you find that the defendant E. S. Wheeler and his grantors have been, for a period of more than 15 years next before the commencement of this suit, viz., October 22, 1898, in actual, continued, visible, notorious, distinct, and hostile possession of the land in dispute, then your verdict should be for the defendants, because such long-continued adverse possession gives Wheeler just as good a title as a deed.

"You are instructed that when possession is by actual occupation of the land in question, or by tenants under claim of title in the landlord, the possession is visible, open, notorious, and distinct, and will be presumed to be hostile.

"The actual, continued, visible, notorious, and hostile possession of land is tantamount to a claim of ownership.

"If you find that the defendant Wheeler and his predecessors successively have maintained adverse possession for more than 15 years up to the east line of the disputed tract, or up to the fence in question, then it is entirely immaterial whether the fence or the east line of the disputed tract is on the surveyed line run originally by the United States government surveyor as a dividing line between private land claims 105 and 106.

"A part of the strip of land in question is land covered by water, or what is called 'water frontage.' You are instructed that it is not necessary that Wheeler and his successive grantors should have held this water front actually in possession, or have of the water front what the law calls '*possessio pedis*,' or possession of the foot. Such possession is only required in case of the solid land, or the upland; and, accordingly, if you find that the defendant Wheeler has had adverse possession, as hereinbefore explained to you, of the upland, for the statutory period of 15 years, this adverse possession of the upland would carry with it the enjoyment of the riparian rights as to the land under the water so far out as the ownership goes for anybody, without any proof further whatever of adverse possession of the water front, or land under the water.

"You are instructed that it is the law that, in retracing lines of a former survey, that course and distance shown by field-notes of the former survey must yield to the original artificial or natural monuments.

"The undisputed testimony shows that Peter Gallagher and his wife, Delia, occupied the land north of Portage avenue as a homestead at the time of the alleged conversation stated to have occurred between Mr. Easterday and Gallagher. You are instructed that Peter Gallagher could not incumber, bind, or convey any portion of his homestead without the consent in writing of his wife, and you are instructed that there is no evidence of such written consent in this case."

*George A. Cady* (*John H. Goff*, of counsel), for appellants.

*E. S. B. Sutton* (*John W. Shine*, of counsel), for appellee.

GRANT, J. (*after stating the facts*). 1. Defendants' counsel insist that it was error not to instruct the jury that there was no evidence that the plaintiff had title by deed. The court substantially gave this request in the language, "That the records, as offered in evidence, fail to establish the title on the part of Mrs. Dawson to claim 106 running back to the United States government." If we understand the contention of the counsel, it is that none of the deeds, leases, etc., of parties in possession claiming ownership, and through whom the plaintiff claims, were admissible in evidence, because of the break in the chain of title on account of the defective deed from McMurray to Mrs. Acker. Whether the court erred in rejecting the record of this deed as an ancient one, we are not called upon to determine, as plaintiff recovered, and we cannot consider now any rulings of the court which were against the plaintiff. The grantors of the plaintiff were in possession of claim No. 106, and executed these deeds, which extended over a period of nearly 50 years, as the owners thereof. This was sufficient, in the absence of proof to the contrary, to establish in the plaintiff a title from the government, under the repeated rulings of this and other courts. *Steinhauser* v. *Kuhn*, 50 Mich. 367 (15 N. W. 513); *Cook* v. *Bertram*, 86 Mich. 356 (49 N. W. 42); *Drake* v. *Happ*, 92 Mich. 583 (52 N. W. 1023); *Hoban* v. *Cable*, 102 Mich. 207 (60 N. W. 466); *Jenkins* v. *Trager*, 40 Fed. 728. The following charge of the court upon this point was correct:

"But, she having shown a chain of title running back for a considerable term of years, if, in that connection, she shows that that title came down through persons in possession of the land claiming as owners, she would in law be presumed to be the owner, and presumed to have a title

which came down from the government; and in that connection, in relation to the possession of herself and those from whom she claimed to hold, the possession of part of the land, under a conveyance covering the whole of it, would be presumed to be a possession of the whole of it, in the absence of anything to the contrary."

2. It is assigned as error that the court did not instruct the jury that "there is no evidence in this cause that the plaintiff has title by adverse possession." We do not find that such a claim on the part of the plaintiff was seriously made in the court below, or that the jury could have been misled by the failure to so instruct them. Plaintiff's theory was that this triangular piece of land was part of private land claim No. 106, and that defendants had obtained no title by adverse possession. The instruction of the court contains nothing to indicate that the question of adverse possession on the part of the plaintiff was submitted to the jury. On the contrary, the theory of the charge is that the land in dispute is a part of private claim 106, and is covered by her deeds.

3. Error is assigned in refusing to give the following request:

"If you find that originally, and while one of the defendants' remote grantors was in possession of the upland in dispute, such grantor built his fence along the margin of the river, and that afterwards the waters of St. Mary's river either receded and left bare land or formed an accretion by washing of the soil up, you are instructed that it would not then be necessary for the successive occupants or grantors of Wheeler constantly to keep this river front fence extended to the waters of the river, because this accretion or bare land, whether actually inclosed or not, belongs to the owner of the shore, whether his title to the shore rests on a deed or on adverse possession for the legal time. Title to the shore carries title to the accretion of newly-formed shore."

We think this request was sufficiently covered by the charge of the court in regard to accretions.

4. Error is assigned upon refusal to give the following request:

"The undisputed evidence in this case shows, with reference to the land in question, that an east fence was built by Mr. Easterday in accordance with a line run by Surveyor Carleton in 1866 or 1867 to ascertain the boundary line. If the jury finds that said east fence was acquiesced in by parties on either side having power to bind the land, and that such parties occupied up to said fence as the true boundary for a period of more than 15 years, acquiescence and occupation would have the effect of establishing the fence as the boundary line, and said boundary line could not thereafter be changed, except by an agreement in writing."

We think the oral charge of the court sufficiently covers this ground, in which the court said:

"If the testimony satisfies you that Mr. Easterday had built a fence along the west line of his property, or where he conceived it to be, at a period more than 15 years prior to this conversation [between Mr. Gallagher and Mr. Easterday]; that that fence had been retained and maintained as a boundary line; that both parties had occupied up to it, and held possession up to that boundary line,—any mere oral agreement between Mr. Easterday and Mr. Gallagher after that time, after the expiration of 15 years, would not be binding upon them or their grantees, unless it was acted upon, and the fence then changed. It would come within the statute of frauds, and, even though they had expressly agreed, it would not be binding upon any of the parties."

It seems to us impossible to hold that a jury, from this and other parts of the charge, would not have understood that the erection of such a fence, and the possession of the land on his side of it for the statutory period, would convey the title to the defendant by adverse possession. At the time of the conversation between Mr. Easterday and Mr. Gallagher, Easterday was the owner of claim 106, and was in possession, while Gallagher and his wife occupied claim 105 as their homestead; the title thereto being in her.

5. Error is assigned upon the refusal to give the request that "the plaintiff can only recover in this case on the strength of her title, and cannot rely for recovery on a

claim of weakness or want of title in the defendants."
Among other things, the court, upon this point, instructed
the jury, " It is necessary for her [ plaintiff ] to show a
title to the property before she can recover in any case."
By this instruction the jury were expressly told that the
plaintiff must recover upon her own title. While this
request would have been entirely proper, and is a correct
statement of the law, where its substance is given the
judgment will not be reversed because not given in the
exact language.

6. Error is also assigned upon the refusal of the court
to give the following request:

"If you find that the parties to this contest and their
predecessors in ownership have treated and acquiesced in
the fence built by Mr. Easterday as the true boundary
line for a period of 15 years prior to the commence-
ment of this suit, then it becomes immaterial and unim-
portant where the actual line of the old original survey
may have been. It would be now too late to disturb it,
and the plaintiff would not be entitled to recover. The
peace of the community requires that all attempts to dis-
turb lines with which the parties concerned have long been
satisfied should not be encouraged, for government surveys
are not always accurate, and the evidence of such survey
may become indistinct or lost; and if, after a long series
of years, old and well-established lines, which have been
recognized as true boundaries, were set aside by new sur-
veys, necessarily the mischief arising from such a policy
would be incalculable, and titles to property thrown into
vast and endless confusion."

We think this is sufficiently covered by the oral charge.

7. Error is alleged upon the refusal to charge that " the
jury are instructed that the plaintiff is not entitled to re-
cover possession of the disputed tract as shown by the sur-
vey and plat of Surveyor Brown." We think the court
said upon Brown's survey and the other surveys all that
was essential when it instructed the jury that they were
not bound by the surveys, etc. ( See charge on this point. )
It is not customary or good practice to select the testimony
of one witness, and tell the jury that they cannot render a

verdict upon that testimony alone. While this might be true, the jury had a right to consider the testimony, and survey of Mr. Brown in connection with all the other testimony in the case.

Errors are assigned upon the admission of testimony. The most of them refer to the introduction of deeds, leases, and contracts covering claim 106, or portions thereof. We find no error in the admission of testimony which we think of sufficient importance to justify a reversal of the case. If all cases were to be reversed because of an error in admitting or rejecting testimony, the number of reversals would be largely increased. The error in such rulings must relate to some material point, and be such as would naturally tend to mislead or prejudice a jury. We find none such in this case.

Judgment affirmed.

The other Justices concurred.