DAWSON *v.* FALLS CITY BOAT CLUB.[1]

1. ADVERSE POSSESSION—INSTRUCTIONS.

In an action of ejectment for a strip of land along the boundary between two parcels, title to which is claimed by defendant by adverse possession, an instruction that if, after defendant moved on the premises, he caused the fence that was then existing between the parcels to be moved still farther towards plaintiff's land, his claim of possession would be a shifting one, and not distinct, and he could not maintain his claim of adverse possession as to "that property," *held*, not sufficiently specific.

2. SAME—EVIDENCE.

Where plaintiff in ejectment in effect admits that, unless a certain agreement is found to have been made, she is not entitled to recover all the land described in her declaration, but claims that, in any event, there is still a strip of the land which she is entitled to recover, she must point out the particular portion claimed by her.

Error to Chippewa; Steere, J. Submitted November 8, 1905. (Docket No. 98.) Decided January 23, 1906.

Ejectment by Carrie Dawson against the Falls City Boat Club, Eben S. Wheeler, and Clara P. Wheeler. A judgment for plaintiff was affirmed by this court (125 Mich. 433), and defendants demanded a statutory second trial, resulting in a judgment for plaintiff, which was reversed on error (136 Mich. 259). A third trial having resulted in a judgment for plaintiff, defendants bring error. Reversed.

*George A. Cady* (*John H. Goff*, of counsel), for appellants.

*E. S. B. Sutton* (*John W. Shine*, of counsel), for appellee.

---

[1] Rehearing denied June 4, 1906.

OSTRANDER, J.   Upon a former trial of this case (125
Mich. 433) it was a debated question whether the strip of
land, the subject of the controversy, was in fact a part of
private land claim No. 106, for which plaintiff had the
paper title, or of private land claim No. 105, paper title
for which was in defendant Wheeler.   Upon the last trial
the defendants based their defense upon the fact of ad-
verse possession of said strip.   The declaration describes
two parcels of land—one a triangular strip 617.8 feet long
and 15 feet wide at its base, extending from Portage ave-
nue north to the shore line, so called; the other a strip of
land bounded on the south by the base line of said triangle
and extending thence north to the channel bank of St.
Mary's river.   The jury returned a verdict for plaintiff
against all defendants for both parcels of land.   In 1867,
one Easterday, the owner of claim No. 106, built a fence
between that claim and claim No. 105, extending from
Portage avenue north to some point short of the channel
bank, probably to a point near the base of the land first
described in the declaration, supposing the line of the fence
to be the true line between these claims.   Plaintiff, as
part of her case in chief, offered evidence, which is undis-
puted, that she and her grantors occupied claim No. 106
up to this line fence, and that defendant Wheeler and his
grantors occupied claim No. 105 up to this fence.   At
some point between Portage avenue and the channel
bank, probably at or near the base of the said triangle,
there was a north and south fence across claims 105 and
106, and occupancy of the portion of the disputed territory
north of this fence is claimed by plaintiff to have been less
clearly defined and evidenced than of the portion south of
the fence.   She introduced evidence tending to show that
in 1879 or 1880, 12 or 13 years after the line fence was
built, her grantor having discovered that the fence was
not on the true line of the properties as deeded, the true
line was by the adjoining proprietors evidenced, admitted,
and agreement made to build later a new fence on the
true line; that thereafter actual occupancy continued pre-

cisely as before to the time of beginning this suit, unless, in 1889, defendant, in repairing or extending this line fence, moved it still farther over upon claim No. 106.   Defendants introduced evidence contradicting the alleged discovery of the wrongful location of the line fence and the alleged agreement concerning the true boundary line, and tending to show that successive purchasers down to defendant Wheeler supposed they were buying and were put in actual possession of land bounded on the east by the said line fence; that the fence had not been moved to the east.

Appellants do not complain that the questions of fact thus raised were submitted to the jury, but complain of the language used in instructing the jury concerning the effect to be given the not very satisfactory evidence of moving this line fence.   The court said:

" There is some claim in this case that the fence which was erected by Mr. Easterday, as appears by the undisputed testimony, upon the then supposed line between these two private land claims, has been moved in later years.   The undisputed testimony seems to be that this fence was built by Mr. Easterday in 1867, as he believed at that time, upon the true line.   It would be the law that, proof being given of the building and existence of such a fence at that time, it is presumed to continue where it was then erected, and presumed to be upon the true line, in the absence of anything to the contrary, under the testimony as given.   But whether or not it has at any time been moved is a question of fact for you; and if you find that, after Mr. Wheeler moved upon the premises, he caused this fence that was then existing between claims 105 and 106 to be moved still farther to the east, his claim of possession would be a shifting one, and not distinct, and he could not maintain his claim of adverse possession in this suit as to that property.   But that is a question of fact for you whether the fence has ever been moved or not."

It is contended that the jury must have understood the charge to mean that if they found the fence had been moved the defendants could not recover.   Counsel for plaintiff say that the charge sufficiently indicated to the

jury that by the term "that property" the court meant the additional land, if any, taken in by moving the fence. They maintained that the burden was upon defendants to show to what land the claim of adverse possession extended, and that, if there was no proof of the precise limits of the land claimed to have been adversely occupied, the jury were required to find for plaintiff. Besides the testimony that at the time of beginning this suit, in 1898, the fence was in some places farther to the east than it had been years before, there was testimony tending to show that at the time of the alleged agreement about the boundary line the fence was, at Portage avenue, some inches on defendant's property, and that when the suit was begun it was on the true line. The jury might have believed that the fence was moved at Portage avenue, and it would still be true, since plaintiff claims none of the land on claim No. 105, that such moving of the fence to the true line ought to affect the real issue not at all. We think the language used by the court was likely to be misunderstood by the jury, and that the direction was, in any event, not sufficiently specific.

The testimony of Easterday, the man who built the fence, and who testifies to the agreement made between himself and defendant Wheeler's grantor, is that by a proper survey, with reference to which said agreement was made, "we found the old fence was 18 inches too far to the west at Portage avenue and at the north end it was 15 feet too far to the east. * * * The Ripley survey of the line between 105 and 106 and Carleton's second survey were virtually the same." This seems to indicate precisely such a strip as is now described in the declaration, except that at Portage avenue the line claimed begins at the true boundary, instead of 18 inches to the west of the true boundary. The fence was built on a line given to Easterday by a surveyor. Easterday, in relating the circumstances of the boundary line agreement, was talking about the fence which he built in 1867. His testimony is to the effect that the owner of claim 105 agreed with him that he would thereafter occupy that part of the land east of the

true boundary line in recognition of the true line and until the fence should become decayed; that the fence remained in the same place until 1884, when he sold claim 106 to Dawson, and when defendant Wheeler purchased claim No. 105.   There had been, in 1884, 17 years of occupancy with that fence as the dividing line.   No one fixes the time of moving the fence earlier than 1889, which adds five years to the actual occupancy of the same strip. Plaintiff proved a certain occupancy by defendant and his grantors of certain lands described in her declaration for the required period, and attempted to avoid the legal effect of such occupancy by evidence that it was not, because of an alleged agreement, adverse.   The land to which the alleged agreement related appears to be the same land described in the declaration.   If it is not, and if the plat, which indicates by a red line and by statement the ''line of old fence,'' does not mean the Easterday fence, and also the east boundary of the strip described in the declaration—if, in other words, plaintiff claims that, even if the jury find the alleged agreement not to have been made, there is still a strip of the described land, which she is entitled to recover—she should, upon a record like the one before us, point out the particular portion claimed.   She in effect admits that unless a certain agreement is found to have been made she is not entitled to recover all the land described in her declaration.   If the jury found there was no such agreement, what land was she entitled to recover ?

The other errors assigned have been examined.   Discussion of them will not be profitable.   The charge on the whole favorably presented defendants' theories, and is not open to the criticisms made.   It is clear that the answers to special questions and the general verdict can stand together.

We feel constrained, for reasons stated, to reverse the judgment and grant a new trial.

McAlvay, Montgomery, Hooker, and Moore, JJ., concurred.